ALLYN & FORTUNA LLP
Nicholas Fortuna, Esq. (9191)
Jesse A. Kaplan, Esq. (4594)
200 MADISON AVENUE, 5TH FLOOR
NEW YORK, NEW YORK 10016
(212) 213-8844

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————

ALLEN KAUFMAN by assignment of rights from
PRINCIPAL CONNECTIONS LIMITED
dba MLX; and KLICKADS, INC.,
dba BROKERSNYC,

               Plaintiff,

     -against-

NEST SEEKERS, LLC and NEST SEEKERS CORP.,
dba NEST SEEKERS INTERNATIONAL
and NESTSEEKERS.COM;
AMIR EDDIE SHAPIRO;
CHURCHILL CORPORATE SERVICES, INC;
And DOES 1 through 34, inclusive,

               Defendant.
——————————————————————

## COMPLAINT AND JURY DEMAND

     Plaintiff Allen Kaufman by assignment of rights from Principal Connections Limited dba MLX and Klickads, Inc., dba BrokersNYC (referred to collectively as "Plaintiff") as and for his complaint hereby alleges as follows:

### JURISDICTION AND VENUE

     1.     This is an action for unlawful access to stored electronic communications under the Electronic Communications Privacy Act, 18 U.S.C.A. §§ 2701 and 2707, and for fraud in connection with a computer under 18 U.S.C.A. § 1030.  Plaintiff also alleges conversion, trespass to chattels, unfair competition, and breach of contract under the laws of the State of New

York.  This Court has original jurisdiction and supplemental jurisdiction over this action pursuant to 28 U.S.C.A. § 1331.

2.      This Court has personal jurisdiction over defendants Nest Seekers, LLC and Nest Seekers Corp., dba Nest Seekers International and Nestseekers.com, Amir Eddie Shapiro, Churchill Corporate Services, Inc., and Does 1 through 34, inclusive, (referred to collectively as "Defendants") in that Defendants reside and conduct business in this judicial district, the acts complained of herein are believed to have occurred in this judicial district, and the Defendants otherwise can be found in this judicial district.

3.      Venue is proper in this Court pursuant to 28 U.S.C.A. § 1391 because the Defendants reside in this judicial district and/or a substantial part of the events giving rise to this action occurred in this judicial district.

## THE PARTIES

4.      Plaintiff Allen Kaufman is an individual who resides in the district and Principal Connections Limited dba MLX and Klickads, Inc., dba BrokersNYC have assigned all rights and causes of action against Defendants to plaintiff Allen Kaufman.

5.      By said assignment, Allen Kaufman has the authority to pursue all rights and interests of Principal Connections Limited dba MLX and Klickads, Inc., dba BrokersNYC.

6.      Principal Connections Limited dba MLX ("PCL") is a C Corporation organized and existing under the laws of the State of New York with its principal place of business located at 11 West 25th Street, 10th Floor, New York, New York 10010.

7.      Klickads, Inc., dba BrokersNYC ("BrokersNYC") is a C Corporation organized and existing under the laws of the State of New York with its principal place of business located at 11 West 25th Street, 10th Floor, New York, New York 10010.

8.      Upon information and belief, defendant Nest Seekers LLC, dba Nest Seekers International dba Nestseekers.com, is a limited liability corporation and licensed real

estate broker that operates at numerous locations throughout the district including 2190 Broadway, New York, New York 10024, 20 East 49th Street, New York, New York, 10017, and 85 Washington Place, New York, New York 10011.  Upon information and belief, defendant Nest Seekers Corp, dba Nest Seekers International dba Nestseekers.com, is organized and existing under the laws of the State of New York with its principal place of business located 20 East 49th Street.  Nest Seekers LLC, and Nest Seekers Corp., dba Nest Seekers International dba nestseekers.com, will be referred to collectively as "Nest Seekers."

9.     Upon information and belief, defendant Amir Eddie Shapiro ("Shapiro") is an individual who resides in the district and is the Chief Executive Officer of Nest Seekers.

10.     Upon information and belief, defendant Shapiro was a real estate broker licensed by the state of New York, and is Nest Seeker's broker of record.  As Nest Seeker's broker of record, Shapiro was responsible for the conduct of all licensed salespersons whose licenses he held.

11.     Upon information and belief, defendant Churchill Corporate Services, Inc., ("Churchill") is a corporation existing under the laws of the State of New York with its principal place of business located at 6 East 32nd Street, New York, New York, 10016.

12.     Upon information and belief, Defendants Does 1 through 34, inclusive, (collectively "Doe Defendants") are corporations, partnerships, proprietorships, unincorporated associations, and/or individuals whose identities and addresses are presently unknown to Plaintiff and are not presently capable of ascertainment.  Plaintiff is informed and believes, and on that basis alleges, that the Doe Defendants assisted, supported, and participated with the other named Defendants in engaging in the conduct complained of herein, and accordingly are or will be

subject to the jurisdiction of this Court.  Plaintiff will amend his pleadings to allege the true

identities of the Doe Defendants when their respective identities are ascertained.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

13.     PCL is a real estate services company that was founded in 1993.  Through

its internet websites, PCL offers a multiple listing service, enabling multi-directional matching of

buyers, renters, sellers, landlords and brokers.  This one-stop matching platform provides

services to individual consumers and real estate professionals, including landlords and brokers.

PCL provides real estate services to consumers under MLX and to real estate professionals under

BrokersNYC.

14.     In or about January 2003, PCL spun off BrokersNYC, under a new

company, Klickads, Inc., dba BrokersNYC.

15.     PCL derives revenues from consumer one-time memberships to MLX and

monthly broker subscription fees to BrokersNYC.  The BrokersNYC subscription includes

training, support, advertising and marketing services, and access to www.brokersnyc.com. (the

"Website").

16.     The Website entails a multiple listing forum for brokers to list and search

for residential properties for their clients and to manage their confidential client records, real

estate listings, and advertisements.

17.     The Website is available in all fifty states, and many foreign countries.

18.     Upon information and belief, the Website has been accessed by

individuals in multiple states and foreign countries.

19.     A BrokersNYC subscription can be purchased by real estate brokers on a

companywide basis or on an individual basis.  The price of a monthly subscription varies,

depending upon the number of subscribers and scope of services, from $550 a month to $2000 a month.  The cost for a standard single broker subscription is $550 a month.

20.     Upon purchase of a BrokersNYC subscription, each subscriber is provided with a unique, confidential, private and personal account.

21.     Each BrokersNYC subscriber is assigned a non-sharable private member name and password which is used to login to access each subscriber's personal, private, and confidential account.

22.     Each BrokersNYC subscriber has access to the Website's proprietary information and content, including real estate listings and client/consumer contacts.  This information and content is available to all subscribers.  PCL and BrokersNYC accumulated this proprietary information and content based upon their labor, skill, expenditure, name, reputation, and hard work.

23.     Each BrokersNYC subscriber account contains private, personal, and proprietary information and communications that cannot, and should not be accessed by anyone other than that particular subscriber.  This information cannot be viewed by all subscribers.

24.     All BrokersNYC subscribers are guaranteed that their accounts and the information within their accounts will be kept confidential, and private, and will not be accessed by anyone without their authority.

25.     Each BrokersNYC subscriber account contains a database of real estate listings that the subscriber has inputted.  This includes real estate listings that are proprietary in nature and have been obtained through the subscriber's hard work, good will, skill, name, and reputation.

26.     These listings include property listings for rent or sale, photos, floorplans, and owner contact information that the BrokersNYC subscriber has inputted. The listings may also include the date of availability, a key competitive advantage for real estate brokers.

27.     While each BrokersNYC subscriber has the option of posting these listings to other subscribers, MLX consumers, or on its own company website, BrokersNYC subscribers may also choose not to disclose these listings to the public or any other brokers.  Such listings may only be available to the BrokersNYC subscriber's brokerage firm, select recipients, or to that particular BrokersNYC subscriber.  Essentially, BrokersNYC subscribers may choose to use their accounts like a private address book to store private, confidential, and proprietary information regarding owners and real estate listings that they do not wish to share with the public or other brokers.

28.     A BrokersNYC subscriber may transmit and post listings to certain clients, brokers, or within the BrokersNYC subscriber's brokerage firm.  Such transmittals or postings are facilitated through the Website.  These transmittals or postings may be viewed by accessing a BrokersNYC subscriber account.

29.     Each BrokersNYC subscriber account also contains private and personal information regarding the BrokersNYC subscriber's profile.  While portions of the BrokersNYC subscriber's profile may be publicized to other BrokersNYC subscribers or MLX consumers, this information may remain confidential, private and personalized within the confines of the BrokersNYC subscriber's account.

30.     A BrokersNYC subscriber's account also contains a confidential, personal, and private database of the BrokersNYC subscriber's contacts.  This information is proprietary in

nature and is inputted by the BrokersNYC subscriber.  This information can only be accessed through the BrokersNYC subscriber's account.

31.     This includes contact information regarding the BrokersNYC subscriber's listings such as other brokers, landlords, management companies, etc.

32.     The BrokersNYC subscriber's contacts also may include contact information regarding the BrokersNYC subscriber's clients.  Along with basic contact information such as the BrokersNYC subscriber's client's names, addresses, phone numbers, email addresses, the contacts contain more detailed information regarding the clients' profiles, preferences, and histories.  This includes notes that the BrokersNYC subscriber has inputted into the system regarding what listings a BrokersNYC subscriber has shown to his or her clients, what real estate the client has seen or toured, the clients' comments, and the clients' interests and needs.

33.     Essentially, a BrokersNYC subscriber may use BrokersNYC as a private database to store and organize personal, private, confidential, and proprietary data regarding his or her information and clients.

34.     BrokersNYC subscribers also have the ability to use BrokersNYC's email function to email information to clients, other brokers, landlords, etc.  Moreover, a BrokersNYC subscriber's emails are stored and can be accessed and viewed when accessing the BrokersNYC subscriber's account.   Additionally, BrokersNYC keeps an email history providing a summary of all email correspondence and the subject matter of these correspondence.

35.     Shapiro was hired by PCL in February 2000 as an independent contractor to sell BrokersNYC services and advertising to Manhattan real estate brokers and landlords.

36.     Shapiro signed a Confidentiality Agreement and was aware of the proper ethical use of the BrokerNYC accounts.

37.     Shapiro was treated as a trusted employee/consultant and had administrative access to BrokersNYC account information.

38.     On August 1 2001, Shapiro was terminated for cause.

39.     Upon information and belief, Shapiro was subsequently hired by Churchill, a contact he had made through his employment at PCL.

40.     Upon information and belief, in 2002 Eddie Shapiro started a company called Nest Seekers International, Inc., in partnership with Churchill Corporate Services.

41.     In 2003, PCL and BrokersNYC received a number of complaints and questions from its subscribing brokers regarding their BrokersNYC accounts.  Apparently, someone had been accessing these BrokersNYC subscriber accounts without authorization.

42.     In or about May 2003, PCL and BrokersNYC discovered a pattern of suspicious logins to numerous BrokersNYC subscriber accounts. After an exhaustive review, they established that on more than 4000 occasions, beginning on August 13, 2002 and continuing to October 2, 2003, numerous logins to the Website originated from IP addresses 63.149.81.226 and 68.167.112.34.

43.     IP addresses 63.149.81.226 and 68.167.112.34 belong to Churchill and Nest Seekers.  The BrokersNYC subscriber accounts logged into at these IP addresses did not belong to Churchill or Nest Seekers.

44.     Neither Shapiro, Nest Seekers, nor Churchill were ever subscribers to BrokersNYC, and there is no legitimate reason for Defendants' access to BrokersNYC subscriber accounts.

45.     Since August 2002, there have been over 4000 unauthorized logins to twenty-seven (27) separate BrokersNYC subscriber accounts on the Website from Defendants' computers. (an average of 15 login incidents per day).

46.     It is unknown how many additional unauthorized logins Shapiro and the Nest Seeker Agents made from their personal computers or other office computers outside of the Nest Seekers and Churchill IP addresses.

47.     Upon information and belief, Defendants intentionally, willfully, and knowingly stole BrokersNYC subscriber passwords in order to "hack" into PCL and BrokersNYCs' server, the Website, and into twenty-seven (27) private, personal, confidential BrokersNYC subscriber accounts that contained private, personal, confidential, and proprietary information.

48.     Upon information and belief, Shapiro, Nest Seekers, and Churchill distributed the BrokersNYC login names and passwords to at least thirty-four (34) of Nest Seeker's real estate agents.  Nest Seeker's agents, used the stolen BrokersNYC login names and passwords to knowingly, intentionally, and willfully hack into PCL and BrokersNYCs' server, the Website, and various BrokersNYC subscriber accounts.

49.     Upon information and belief, the Nest Seeker agents were aware that they were accessing the Website without authorization from PCL, BrokersNYC, or the BrokersNYC subscribers whose accounts they were hacking into.

50.     Defendants' conduct constitutes an electronic trespass into PCL and BrokersNYCs' computer facility and into twenty-seven separate private, personal, confidential, and proprietary BrokersNYC subscriber accounts.

51.     Upon information and belief, Defendants misappropriated private, personal, confidential, and proprietary information found within PCL and BrokersNYCs' server, the Website, and the BrokersNYC subscriber accounts.  This included, but was not limited to, BrokersNYC subscribers' property listings, property information, and client databases.

52.     Upon information and belief, Defendants essentially stole the real estate listings and client information from PCL and BrokersNYCs' server, the Website and the BrokersNYC subscribers' accounts for their own use and to help Nest Seekers gain a competitive advantage.

53.     Defendants used the misappropriated information to enlarge their own client base and to increase their commissions by using listings stolen from PCL and BrokersNYCs' server, the Website and BrokersNYC subscribers' personal accounts.

54.     The quantity of Nest Seeker logins indicates that defendants used the Website heavily and relied upon the Website to find clients and listings to generate commissions.

55.     Upon information and belief, Defendants have earned at least $5,000,000. as a result of real estate listings and client information that was misappropriated from the Website.

56.     As a result of Defendants' unauthorized access to the Website and to BrokersNYC subscriber accounts, Plaintiffs were forced to expend a great deal of recourses and money to investigate the "hacking" and unauthorized access, to investigate for damage, and to reveal the infringing activity.

57.     This includes over $125,000 in personnel and software costs.

58.     As a result of Defendants' unauthorized access to the Website and the BrokersNYC subscriber accounts, there has been a decline in subscriptions to BrokersNYC.

59.     As a result of Defendants' unauthorized access to the Website and the BrokersNYC subscribers' accounts, PCL and BrokersNYC have suffered a loss of good will in the real estate community based upon the belief that the Website is not secure.  Brokers are hesitant to use BrokersNYC's services based upon Defendants' unauthorized access to proprietary information in BrokersNYC subscribers' personal private confidential and proprietary accounts.

60.     As a result of Defendants' unauthorized access to the BrokerNYC subscribers' accounts, brokers are hesitant to use BrokerNYC's service based upon the belief that much of the proprietary information, such as listings and client contacts, are no longer exclusive to the Website.  That is, many brokers do not want to pay for the service because they know they can now obtain the same information from those who have accessed the Website without authorization and for free.

61.     In or about September, 2003, the New York City Police Department began investigating Defendants' activity.

62.     Shapiro was subsequently arrested and the New York County District Attorney charged him with a Felony E count of "computer trespass."

63.     On July 22, 2004 Shapiro and the District Attorney reached a plea bargain arrangement whereby Shapiro plead guilty to the lesser charge of "unauthorized use of a computer," a Class A misdemeanor.

64.     At a hearing held on July, 22, 2004 before the Honorable Martin P. Murphy, Shapiro pled guilty to the charge of "unauthorized use of a computer."

65.     In doing so, Shapiro admitted that from August 12, 2002 to October 1, 2003, he provided brokers working for him at Nest Seekers with a list of names and passwords to access the Website and BrokersNYC's service without authorization.

66.     Shapiro further admitted that he did so knowing he had no right to access such customer information.

67.     Shapiro further admitted he obtained confidential listing information from "Brokers NYC dot com customers" without their permission and authority.

### COUNT I

### (Unlawful Access to Stored Electronic Communications)

### (18 U.S.C. § 2701)

68.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-67, inclusive.

69.     The Website and PCL and BrokersNYC s' server constitute a facility through which an electronic communication service is provided pursuant to 18 U.S.C.A. § 2701.

70.     PCL and BrokersNYC are providers of an electronic communication service as well as subscribers to electronic communication services.

71.     PCL and BrokersNYC provide "remote computing services" as defined by 18 U.S.C.A. § 2711, as they provide computer storage and computer services by means of an electronic communications system.

72.     On at least 40000 occasions, Defendants knowingly and intentionally accessed without authorization, PCL and BrokersNYCs' server, the Website, and BrokerNYC subscribers' personal, private, confidential, and proprietary accounts.

73.     Defendants hacked into PCL and BrokersNYCs' server, the Website, and BrokerNYC subscribers' personal, private, confidential, and proprietary accounts, and are

therefore electronic trespassers.

74.     When accessing and hacking into PCL and BrokersNYCs' server, the Website, and BrokerNYC's subscriber's personal, private, confidential, and proprietary accounts, Defendants without authorization, obtained, altered, and prevented authorized access to electronic communications stored on PCL and BrokersNYCs' server.

75.     These electronic communications include, but are not limited to, emails, real estate listings, client contact information, and other private personal, confidential, and/or proprietary information and communications.

76.     These electronic communications effect interstate commerce and foreign commerce.

77.     Defendants' hacking and unauthorized access to PCL and BrokersNYCs' server, the Website, and BrokerNYC subscribers' personal, private, confidential, and proprietary accounts directly effects interstate and foreign commerce.

78.     When accessing PCL and BrokersNYCs' facility, Defendants obtained, altered, and prevented authorized access to an electronic communication in such system.

79.     Accordingly Defendants willfully and intentionally violated 18 U.S.C.A. § 2701.

80.     Pursuant to 18 U.S.C.A. § 2707, Plaintiff is entitled to compensatory damages as a result of Defendants' violations of 18 U.S.C.A. § 2701.

81.     As a result of Defendants' violations of 18 U.S.C.A. § 2701, PCL and BrokersNYC have been damaged in an amount to be determined.

82.     Pursuant to 18 U.S.C.A. § 2707(b) and (c), Plaintiff is entitled to Defendants' profits made as a result of Defendants' violations.

83.     Upon information and belief, Defendants have earned at least $5,000,000. as a result of real estate listing and client information that was misappropriated from PCL and

BrokersNYCs' server, the Website, and BrokerNYC subscribers' personal, private, confidential, and proprietary accounts.

84.     The exact amount of profits that Defendants earned is unknown at this time.

85.     Accordingly, Plaintiff seeks to disgorge all profits that Defendants made as a result of any information that Defendants unlawfully and without authorization, accessed on PCL and BrokersNYCs' server, the Website, and within BrokerNYC subscribers' accounts.

86.     Pursuant to 18 U.S.C.A. § 2707(b) and (c), Plaintiff is at the very least, entitled to statutory damages in the amount of $1000 per violation of 18 U.S.C.A. § 2701.

87.     Defendants have accessed PCL and BrokersNYCs' server, the Website, and BrokersNYC subscriber accounts without authorization and have violated 18 U.S.C.A. § 2701 over 4000 times.  Accordingly, at a very minimum, Plaintiff is entitled to $4,000,000 in statutory damages pursuant to 18 U.S.C.A. § 2707(b) and (c).

88.     Pursuant to 18 U.S.C.A. § 2707, Plaintiff is entitled to punitive damages based upon Defendants outrageous, willful, and intentional violations of 18 U.S.C.A. § 2701. Said conduct was despicable and harmful to PCL and BrokersNYC and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of the Defendants and to deter them from similar conduct in the future.

89.     Pursuant to 18 U.S.C.A. § 2707, Plaintiff is entitled to the costs of the action, together with reasonable attorney fees.

90.     Pursuant to 18 U.S.C.A. § 2707, Plaintiff is entitled to a permanent injunction barring Defendants from engaging in such conduct.

## COUNT II

### (Fraud And Related Activity In Connection With Computers)

### (18 U.S.C. § 1030)

91.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-90, inclusive.

92.    PCL and BrokersNYCs' server and the Website constitute a "protected computer."

93.    Defendants intentionally accessed PCL and BrokersNYCs' protected computer without authorization, and as a result of such conduct, caused losses and damage in an amount exceeding $5,000.

94.    Pursuant to 18 U.S.C.A. § 1030(g), Plaintiff is entitled to all economic damages resulting from Defendants' violation of that section.

95.    Plaintiff is entitled to all reasonable costs as a result of Defendants' violation of the section, including the cost of responding to the offense, conducting a damage assessment, restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of Defendants' activities.

96.    Accordingly, Plaintiff is entitled to damages as a result of Defendants violation of this section, in an amount to be determined.

## COUNT III

### (New York State Conversion)

97.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-96, inclusive.

98.    The information and content found within PCL and BrokersNYCs' server and on the Website is proprietary in nature.

99.    PCL and BrokersNYCs' server and its capacity are personal property.

100.    The cost of accessing such information is at least $550 per month for an individual broker.

101.    Defendants accessed, viewed, and used the proprietary content found in PCL and BrokersNYCs' server and on the Website without paying this, or any other agreed upon rate to PCL and BrokersNYC.

102.    Defendants, without PCL and BrokersNYCs' authority intentionally accessed PCL and BrokersNYCs' and the Website and exercised dominion and control over their server, the Website, and the content therein.  In doing so, Defendants have interfered with PCL and BrokersNYCs' ownership rights to their server, the Website, and their content.

103.    Between August 2002 and October 2003, Shapiro and approximately thirty-four (34) other Nest Seeker brokers accessed PCL and BrokersNYCs' server and the Website without authorization and without paying for the service.

104.    Defendants are liable for the value of the cost of accessing the Website and its content.

105.    Plaintiff is further entitled to compensatory damages in an amount to be determined based upon loss of good will and damage to Plaintiffs' business as a result of Defendants' conversion, dominion, control, and use of proprietary content found within the Website.

## COUNT IV

### (New York State Trespass To Chattels)

106.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-105, inclusive.

107.    Defendants accessed the Website.  Upon doing so, Defendants exceeded the scope of PCL and BrokersNYCs' authority to access certain free/public portions of the Website by accessing the private, personal, confidential, and proprietary personal accounts of BrokersNYC subscribers as well as portions of the Website that can only be accessed by paying a fee.

108.    Defendants exceeded the scope of PCL and BrokersNYCs' consent to view and access certain content found on the public and free portions of the Website by electronically trespassing and accessing the private, personal, confidential, and proprietary personal accounts of BrokersNYC subscribers.

109.    Defendants have caused possessory interference and have diminished the condition, quality, and value of PCL and BrokersNYCs' property.

110.    PCL and BrokersNYCs' server and its capacity are personal property. Defendants' access to the Website used a portion of this property.

111.    Defendants have further deprived PCL and BrokersNYC of the ability to use that portion of their computer system's capacity.

112.    Plaintiff is therefore entitled to compensatory damages based upon loss of good will, decline in membership, damages to PCL and BrokersNYCs' business as a result of Defendants' unauthorized use of the Website, and the measures PCL and BrokersNYC had to take to remedy the harm.

**COUNT V**

**(New York State Unfair Competition- Misappropriation of Information)**

113.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-112, inclusive.

114.    PCL and BrokersNYC owned certain confidential and proprietary information, including, but not limited to, certain real estate listing, client contact information, and access to clients and landlords.  This information and content was made available to BrokersNYC subscribers on the Website.

115.    The Website's content was accumulated as a result of PCL and BrokersNYCs' labor, skill, expenditure, name, and reputation.

116.    Subscribers to BrokerNYC would pay a fee to access this information.

117.    Without authorization, without paying such fees, and in bad faith, Defendants knowingly, intentionally, and willfully accessed confidential and proprietary information and content found within the Website and within BrokerNYC's subscribers' accounts.

118.    Upon information and belief, Defendants accessed the confidential and proprietary information and content found within the Website in order to obtain a commercial advantage.

119.    Upon information and belief Defendants accessed the confidential and

proprietary information and content found within the Website in order to use the proprietary and confidential real estate listings and client information for their own benefit, and to gain a commercial advantage over their competitors.

120.    In bad faith, Defendants knowingly, intentionally, and willfully misappropriated proprietary information and content found on the Website.

121.    Plaintiff is entitled to reimbursement for the cost of thirty-four (34) broker memberships for a period of fourteen (14) months at a rate of $550 a month.

122.    Plaintiff is further entitled to compensatory damages in an amount to be determined based upon loss of good will and damage to PCL and BrokersNYCs' business as a result of Defendants' conduct.

**COUNT VI**

**(New York State Breach Of Contact –Defendant Shapiro)**

123.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-122, inclusive.

124.    On or about March 13, 2000, Defendant Shapiro entered into a Confidentiality/Non-compete agreement (the "Agreement") with PCL.

125.    The Agreement constitutes an enforceable contract under the laws of the State of New York.

126.    Pursuant to paragraph six of the Agreement, "The Consultant [Shapiro] will not during or at any time after the period of the Consultant's employment by PCL, use for the Consultant or for others or divulge or convey to others not authorized in writing by PCL to receive it, trade secrets or other confidential information relating to business of PCL in any way obtained by the Consultant while performing consulting services for PCL."

19

127.    Pursuant to paragraph six of the Agreement, "All memoranda, notes, records, papers or other documents, and all copies thereof, and all physical property owned by or relating to the business of PCL, including, without limitation, lists of customers, owners, management companies, and brokers, either obtained during the course of the Consultant performing consulting services or prepared by the Consultant shall be confidential and proprietary to and owned by PCL and shall not be removed without written permission from PCL…The Consultant specifically acknowledges that PCL has expended considerable time and funds to develop its customer lists and computer software and that such lists and software are among PCL's trade secrets.  Without limiting the enforceability of any part of the Agreement, the Consultant specifically agrees not to contest the proprietary nature of PCL's customer lists and software in any legal or other proceeding to enforce any provision of this Agreement."

128.    Pursuant to paragraph ten of the Agreement, "…the Consultant further agrees that if the Consultant breaks such covenants irreparable harm will be caused to PCL for which there is no adequate remedy at law and that PCL shall be entitled, in addition to any other remedies and damages available, to an injunction to restrain the violation of any such covenant without having to post a bond or other security.  Consultant agrees that, in the event MLX prevails, Consultant will be obligated to pay any and all of MLX's legal fees which MLX incurs in defending or upholding any of the provisions of this Agreement…".

129.    On multiple occasions, Shapiro removed, used, divulged, conveyed, and misappropriated PCL's trade secrets and confidential and proprietary information relating to PCL's business.  Accordingly, Shapiro is in breach of the Agreement.

130.    As a result of such breach, PCL has suffered irreparable harm.

131.    Accordingly, Plaintiff is entitled to damages in an amount to be

determined.

132.    As Plaintiff has no adequate remedy at law, Plaintiff is entitled to an injunction to restrain Shapiro's conduct without having to post a bond or other security

133.    Plaintiff is entitled to all costs and legal fees incurred relating to this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that:

1.    Pursuant to 18 U.S.C.A. § 2701 and 18 U.S.C.A. § 2707, Plaintiff is entitled to:

a.    Damages resulting from Defendants violations of 18 U.S.C.A. § 2701, in an amount to be determined;

b.    All profits that Defendants made as a result of any information that Defendants unlawfully and without authorization, accessed on PCL and BrokersNYCs' server, the Website, and within BrokerNYC subscribers' accounts;

c.    Statutory damages in the amount of $1000 per violation of 18 U.S.C.A. § 2701.  As Defendants have accessed PCL and BrokersNYCs' server, the Website and BrokersNYC subscriber accounts and have violated 18 U.S.C.A. § 2701 over 4000 times, at the very least, Plaintiff is entitled to $4,000,000 in statutory damages pursuant to 18 U.S.C.A. § 2707(b) and (c);

d.    Punitive damages based upon Defendants outrageous, willful, and intentional violation of 18 U.S.C.A. § 2701;

e.    The cost of the action, together with reasonable attorney fees; and

       f.     A permanent injunction barring Defendants from engaging in such conduct.

      2.     Pursuant to 18 U.S.C.A. § 1030(g), Plaintiff is entitled to all economic damages resulting from Defendants' violation of that section including all reasonable costs as a result of Defendants' violation of the section, including the cost of responding to the offense, conducting a damage assessment, restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of Defendants' activities;

      3.     Defendants be compelled to pay damages pursuant to New York's conversion law in an amount equal to PCL and BrokersNYCs' actual damages in an amount to be determined;

      4.     Defendants be compelled to pay damages pursuant to New York's trespass to chattels law in an amount equal to PCL and BrokersNYCs' actual damages in an amount to be determined;

      5.     Defendants be compelled to pay damages pursuant to New York's unfair competition law in an amount equal to PCL and BrokersNYCs' actual damages in an amount to be determined;

      6.     Based on Defendant Amir Eddie Shapiro's breach of contract:

       a.     That defendant Shapiro be compelled to pay damages in an amount to be determined;

       b.     Plaintiff is entitled to an injunction restraining Shapiro's conduct;

          c.     Plaintiff is entitled to all costs and legal fees incurred relating to this action.

          7.     Plaintiff obtain such other and further relief as the Court may deem just and proper.

Dated: July 25, 2005
      New York, New York

                Respectfully submitted,

                ALLYN & FORTUNA LLP

                By:_____
                Nicholas Fortuna, Esq. (9191)
                Jesse A. Kaplan, Esq. (4594)
                200 Madison Avenue, 5th Floor
                New York, New York 10016
                (212) 213-8844
                (212) 213-3318 (facsimile)